UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TONY POWELL, JR.,

                Plaintiff,

v.                                                    Case No. 21-cv-989-pp

LORI-JEAN M. METTELAL,

                Defendant.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE FOR FAILURE TO STATE A CLAIM**

---

      Tony Powell, Jr., who is incarcerated at Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendant failed to provide adequate medical treatment for his skin condition. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

I.    **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to let an incarcerated plaintiff proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the incarcerated person must pay an initial partial filing fee. 28 U.S.C.

§1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On August 31, 2021, the court ordered the plaintiff to pay an initial partial filing fee of $88.17. Dkt. No. 6. The court received that fee on September 10, 2021. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

   A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff alleges that he has had bumps or boils on his head since November 5, 2019. Dkt. No. 1 at 2. He says he wrote to the Health Services Unit ("HSU") about his bumps "[b]leeding and [p]ussing" and causing him headaches. Id. He says it hurts to lie down, so he has difficulty sleeping. Id. The plaintiff alleges that Advanced Practice Nurse Practitioner Lori Jean Mettetal "keep on prescribing" him medication that does not work, and the bumps keep returning. Id. He alleges that he told Mettetal that the medication does not work, but she "keep on (ignoring) the (facts) for almost 3 years." Id. at

2–3. He says Mettetal refuses to change his medication despite his repeated requests for a different one. Id. at 3. He says he has contacted the HSU repeatedly, but the staff there "are not trying to help [him] get better by sending [him] back to dermatology." Id. He asks for five million dollars for pain and suffering and to be sent "off ground to an real dermatology doctor" so he can find out what is wrong. Id. at 4.

The plaintiff attached to his complaint 92 pages of documents, including his medical records and an inmate complaint report. Dkt. No. 1-1. Because "documents 'attached to the complaint' are 'part of the complaint,'" the court also reviews these documents when determining whether the complaint states a claim. See Perez, 792 F.3d at 783 (quoting Arnett v. Webster, 658 F.3d 742, 746 (7th Cir. 2011)). Included among the attachments is an "Off-Site Service Request and Report." Dkt. No. 1-1 at 6. This form shows that on March 25, 2021, the prison sent the plaintiff off-site to Forefront Dermatology for a consultation. Id. The defendant is the one who referred the plaintiff for the off-site visit. Id. Also attached is a copy of the notes from the plaintiff's off-site appointment with Doctor Semyon Zarkhim. Id. at 7. Dr. Zarkhim examined the plaintiff's head, face and neck and noted he was "in no acute distress." Id. Dr. Zarkhim noted several "inflammatory papules and scars located on the scalp." Id. He recommended that the plaintiff take 100mg of Minocycline twice a day for three months, apply Clindamycin solution to his scalp twice daily and apply benzoyl peroxide to the bumps once a day. Id. He also recommended that the plaintiff apply Ketoconazole cream to the affected area on his neck twice a day

for one month. Id. Dr. Zarkhim recommended a follow-up appointment at a date to be determined by HSU staff per prison policy. Id. at 6–7.

The plaintiff also attached the inmate complaint examiner's office report on a grievance he filed about his medical treatment, although he did not attach the grievance itself. Id. at 1–5. The inmate complaint examiner's office received the grievance on April 1, 2021—one week after the plaintiff's off-site dermatology appointment. Id. at 1. The inmate complaint examiner summarizes the plaintiff's complaint as, "Complains he is not getting meaningful treatment from HSU for the bleeding and oozing bumps on his head." Id. The inmate complaint examiner says she met with the HSU Manager (not a defendant), who reviewed the plaintiff's medical records. Id. The plaintiff's records showed that on February 23, 2021, the plaintiff saw a nurse practitioner (the defendant), who scheduled a dermatology consultation. Id. The inmate complaint examiner notes that on March 25, 2021, the plaintiff had his off-site dermatologist appointment. Id. The inmate complaint examiner notes that the nurse practitioner (the defendant) "reviewed the off-site report and had to submit a non-formulary drug request for ketoconazole cream and clindamycin solution." Id. The complaint examiner notes that the next day, the prison approved the medications Dr. Zarkhim recommended. Id. The complaint examiner states that a follow-up was scheduled with Dr. Zarkhim but does not provide the date of the follow-up appointment. Id.

The inmate complaint examiner recommended dismissing the complaint. Id. About a month later a reviewing authority accepted that recommendation

and dismissed the plaintiff's complaint. Id. at 3. The plaintiff appealed the denial of his inmate complaint, but the appeal itself is not attached. Id. at 4. A corrections complaint examiner recommended dismissing the appeal, and the Office of the Secretary accepted that recommendation and dismissed the appeal. Id. at 4–5.

The remainder of the attachments detail the plaintiff's treatment before the prison sent him sent off-site for his appointment with Forefront Dermatology. For example, attached progress notes written by various medical officials between February 2019 and February 2021 show the prison's attempts to treat the bumps with several medications, prescription shampoos and lotions. Id. at 10–47. Nurse Mettetal examined the plaintiff only in January and February 2021. Id. at 10–13. On February 23, 2021, she placed the dermatology consultation request. Id. at 11–12. The plaintiff also attached health service requests he submitted during the same time frame. Id. at 48–92. HSU officials regularly responded to the plaintiff's requests, scheduled him for appointments with nurses or other medical providers and provided him medication. Id. On two occasions, the plaintiff refused to be seen after requesting medical attention. Id. at 43.

C.   Analysis

The court reviews the plaintiff's allegations regarding the denial of proper medical care under the Eighth Amendment, which "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." Gabb v. Wexford Health

6

Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). Not "every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim." Gutierrez v. Peters, 111 F.3d 1364, 1372 (7th Cir. 1997). To state a valid Eighth Amendment claim, the inmate must allege both that he "suffered from an objectively serious medical condition" and that the defendants were subjectively "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (en banc) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)); see Estelle v. Gamble, 429 U.S. 97, 103 (1976). To satisfy the objective component, the plaintiff must show that he had a medical condition "that is so obvious that even a lay person would perceive the need for a doctor's attention." Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005).

A prison official shows deliberate indifference when she "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837). This does not mean the plaintiff must show that the defendant entirely ignored a substantial risk of serious harm. He also may satisfy this element by showing that the defendant "doggedly persisted in a course of treatment known to be ineffective." Greeno, 414 F.3d at 655. In short, the plaintiff must show that the treatment he received was "'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' his condition." Id. at 654 (quoting Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996)).

The plaintiff alleges that he suffered from bumps or boils on his head that bled and oozed, causing him significant pain that made it difficult to sleep. Allegations of severe and persistent pain may constitute a serious medical need. Walker v. Benjamin, 293 F.3d 1030, 1040 (7th Cir. 2002). The plaintiff alleges that his pain was significant enough to warrant several doctor or nurse appointments over at least two years. The court finds that these allegations satisfy the objective component of an Eighth Amendment claim.

Regarding the subjective element, however, the complaint paints two different pictures of the same events. The plaintiff's allegations suggest that Nurse Mettetal and other medical providers at the prison ignored his complaints, persisted in following an ineffective course of treatment and/or refused to treat him over two years. But the attachments contradict his allegations. The attachments, which include the plaintiff's medical records, show that the defendant and other medical professionals at the prison examined and treated the plaintiff's skin condition with medications, lotions and shampoos. When one course of treatment proved ineffective, they tried something else. After two years of varying results, the prison sent the plaintiff to a dermatologist for an examination. Nurse Mettetal, the only named defendant, requested this off-site consultation. The prison approved the dermatologist's recommendations and scheduled the plaintiff for a follow-up appointment with the dermatologist.

The attachments do not show that the defendant, or anyone in the HSU, disregarded the plaintiff's condition. They instead show a concerted effort to

treat his condition with varying treatment and, when those did not work, an off-site consultation with a specialist. Under the Constitution, the plaintiff is entitled only "to reasonable measures to meet a substantial risk of serious harm." Forbes v Edgar, 112 F.3d 262, 267 (7th Cir. 1997); see Christopher v. Liu, ___ F. App'x ___, No. 20-2602, 2021 WL 2577132, at *3 (7th Cir. June 23, 2021) (citing Arnett, 658 F.3d at 754) ("[T]he Eighth Amendment does not give prisoners the right to demand specific medical treatment . . . ."). Although the plaintiff is understandably frustrated by his persistent skin issue, the records he provides show that the prison has made reasonable attempts to remedy it. Even if he still suffers from the bumps on his head, that does not mean Nurse Mettetal or other medical professionals at the prison have been deliberately indifferent to his condition. His medical records demonstrate the opposite. At most, the complaint shows a disagreement between the plaintiff and his medical providers about the course of his medical treatment. But disagreement about the course of treatment does not constitute a constitutional violation or present a claim under §1983. Estelle, 429 U.S. at 107; Snipes, 95 F.3d at 592.

The court finds that the complaint does not state an Eighth Amendment claim of deliberate indifference against Nurse Mettetal or any medical professional who treated the plaintiff's head bumps. The court will not allow the plaintiff to proceed on this claim and will dismiss the case. Although courts generally permit civil plaintiffs at least one opportunity to amend their pleadings before dismissing, the court need not do so where the amendment would be futile. See Boyd v. Bellin, 835 F. App'x 886, 889 (7th Cir. Feb. 10,

9

2021). The complaint is thorough in its allegations of facts surrounding this claim, which the attachments refute. The court therefore finds that allowing the plaintiff to amend would be futile.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim. The clerk will enter judgment accordingly.

The Clerk of Court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$261.83** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Green Bay Correctional Institution.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 19th day of October, 2021.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**